UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DAE'JA WILLIAMS,

                    Plaintiff,

          v.                                            21-CV-522-LJV
                                                        DECISION & ORDER
TOWN OF CHEEKTOWAGA, *et al.*,

                    Defendants.

_____

On April 19, 2021, the plaintiff, Dae'Ja Williams, commenced this action, alleging

claims of false arrest and malicious prosecution under 42 U.S.C. § 1983 and claims of

discrimination based on race under 42 U.S.C. § 1981.  Docket Item 1.  She brought her

false arrest and discrimination claims against the Town of Cheektowaga (the "Town");

the Town of Cheektowaga Police Department (the "Police Department"); Jane Doe, an

employee of the Town and the Police Department; and John Does 1 and 2, two police

officers employed by the Town and Police Department.  *Id.*  She asserted her malicious

prosecution claim against those same defendants as well as the County of Erie (the

"County").  *Id.*

On June 11, 2021, the County moved to dismiss, Docket Item 3, and about a

week later, the Town did the same,[1] Docket Item 6.  On July 26, 2021, Williams

---

[1] The Police Department also moved to dismiss the claims against it.  Docket
Item 6.  In Williams's response, she concedes that the Police Department is not a
proper defendant.  Docket Item 16-1 at 8.  This Court therefore deems Williams's claims
against the Police Department to be withdrawn and denies the Police Department's
motion to dismiss as moot.  The Clerk of the Court shall terminate the Police
Department as a defendant.

responded to the County's motion, Docket Item 14, and she responded to the Town's

motion a week later, Docket Item 16.[2]  The County then replied, Docket Item 15, as did

the Town, Docket Item 17.

For the following reasons, the County's and the Town's motions to dismiss are

granted, but Williams may amend her complaint, within 30 days, to correct the

deficiencies noted below.

## FACTUAL ALLEGATIONS

On a motion to dismiss, the Court "accept[s] all factual allegations as true and

draw[s] all reasonable inferences in favor of the plaintiff."  *Trs. of Upstate N.Y. Eng'rs*

*Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016).  In light of that

standard, the complaint tells the following story about an arrest that occurred in

Cheektowaga, New York, on May 16, 2018, and the prosecution that followed.

On May 16, 2018, Williams visited the Cheektowaga Town Court to pay an

outstanding fine for a New York Vehicle and Traffic Law violation.  Docket Item 1 at

¶ 19.  Williams approached the clerk's desk and paid Jane Doe the fine.  *Id.* at ¶ 20.

Jane Doe accepted the payment but then told Williams that "there was another matter

regarding her name."  *Id.*

Jane Doe left the desk and returned with two police officers, John Doe 1 and

John Doe 2.  *Id.*  The officers arrested Williams for a burglary that occurred on April 20,

---

[2] The complaint also sought punitive damages against the County and the Town.
In her responses to the motions to dismiss, however, Williams concedes that punitive
damages are not available against either party.  Docket Item 14-1 at 10; Docket Item
16-1 at 8.  This Court therefore deems Williams's claims for punitive damages against
the County and the Town to be withdrawn.

2018.  *See id.* at ¶¶ 18, 21.  She was placed in a jail cell and remained in custody

overnight.  *Id.* at ¶¶ 22-23.  "[F]rom the moment of her arrest," Williams denied

committing the alleged crimes.  *Id.* at ¶ 28.  Nevertheless, she was charged with

violations of New York Penal Law § 145.05(2),[3] criminal mischief in the third degree,

and New York Penal Law § 140.25(2), burglary in the second degree.  *Id.* at ¶ 27.

As it turned out, Williams did not commit those crimes; in fact, she was nowhere

"near where the alleged crimes occurred on April 20, 2018."  *Id.* at ¶ 29.  Williams was

arrested only because she had "a similar first name and [the] same last name as the

actual perpetrator of the crimes," *id.* at ¶ 30; *see also id.* at ¶ 26, and because Williams

and the "actual perpetrator" shared the same race,[4] *id.* at ¶¶ 26, 34.

The defendants continued to prosecute Williams "even after being provided

information and evidence to establish that she was" not at the location of the crimes and

simply shared a similar first name and the same last name with the suspect.  *Id.* at ¶ 30.

Williams was forced to make "numerous court appearances" and missed opportunities

to work because she had to attend court.  *Id.* at ¶ 31.  After approximately five months,

the criminal charges were finally dismissed "when the County finally investigated the

charges against [Williams] and realized the wrong person was arrested."  *Id.* at ¶ 32.

---

[3] The complaint states that Williams was charged with section "140.05(2)—3rd Degree Criminal Mischief," *id.* at ¶ 27, but there is no section 140.05(2) in the New York Penal Code.  Criminal mischief in the third degree is codified in section 145.05(2) of the code.  The Court therefore assumes that the citation is a typographical error and that Williams meant to refer to section 145.05(2).

[4] Both Williams and the "actual perpetrator" are African American.  *Id.* at ¶¶ 26, 34.

"Any investigation . . . by [the d]efendants could have, and should have,"

revealed that Williams was not the person the defendants sought.  *Id.* at ¶ 35.  But a

number of "customs, policies, usages, practices, procedures[,] and rules" of the Town

prevented that from happening, including:

> [(1)] arresting individuals without conducting a proper or reasonable
> investigation or due diligence; [(2)] failing to question witnesses or other
> individuals who may have relevant information as to whether or not the
> accused committed the crime they are accused of; [(3)] arresting an
> innocent person, without probable cause or reasonable suspicion; [(4)]
> arresting individuals based on name without any further connecting
> evidence or support for the arrest; and [(5)] failing to listen to information
> given by the [p]laintiff, or similarly situated citizens, which, if investigated in
> any manner, would have established that she should not be arrested or
> unlawfully imprisoned.

*Id.* at ¶ 45.  The Town also had a number of "customs, policies, usages, practices,

procedures[,] and rules" that resulted in Williams's being arrested and prosecuted

because of her race even though the defendants had no reasonable suspicion or

probable cause.  *Id.* at ¶ 60 (re-alleging policies and practices similar to the above but

adding that the Town took each action "because of [the person's] race").

## LEGAL STANDARD

To decide a motion to dismiss for failure to state a claim upon which relief may

be granted,[5]  courts "ask whether the complaint contains 'sufficient factual matter,

---

[5] The Town moves under both Federal Rules of Civil Procedure 12(b)(6) and
12(c).  Docket Item 6.  Rule 12(c) provides that "[a]fter the pleadings are closed—but
early enough not to delay trial—a party may move for judgment on the pleadings."  The
pleadings are not yet closed in this action because the defendants have not answered.
Accordingly, the Town's motion under Rule 12(c) is denied as premature.  But that is
really of no moment because the standard for deciding a Rule 12(c) motion is "the same
. . . standard [that applies] to dismissals pursuant to [Rule] 12(b)(6)."  *L-7 Designs, Inc.
v. Old Navy, LLC*, 647 F.3d 419, 429 (2d Cir. 2011).

accepted as true, to state a claim to relief that is plausible on its face.'"  *Gamm v.*

*Sanderson Farms, Inc.*, 944 F.3d 455, 462 (2d Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009)).  "The court accepts as true all well-pleaded factual allegations in

the complaint [and] draws all reasonable inferences in favor of the nonmoving party."

*Id.* (citation omitted).  But courts "are not bound to accept as true a legal conclusion

couched as a factual allegation," nor will "a formulaic recitation of the elements of a

cause of action" suffice.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(citation omitted).

## DISCUSSION

### I.  SECTION 1983[6] AND *MONELL* LIABILITY

"To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the

challenged conduct (1) was attributable to a person acting under color of state law, and

(2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or

---

[6] Williams alleges her first and second causes of action under section 1983, *see* Docket Item 1 at ¶¶ 36-49, and her third and fourth causes under 42 U.S.C. § 1981, *see id.* at ¶¶ 50-66.  The Town asserts that the same standard for municipal liability applies under section 1981 as under section 1983.  *See* Docket Item 6-4 at 4 (citing *Nieblas-Love v. N.Y.C. Hous. Auth.*, 165 F. Supp. 3d 51, 75 (S.D.N.Y. 2016)).  As a threshold matter, it is not clear to this Court that Williams may assert claims against the Town under section 1981.  Section 1981 "outlaws discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship."  *Patterson v. County of Oneida*, 375 F.3d 206, 224 (2d Cir. 2004).  Section 1983, on the other hand, is not itself the source of a substantive right but "merely provides a method for vindicating federal rights [against a state actor] elsewhere conferred, such as those conferred by [section] 1981."  *Id.* at 225 (citation and internal quotation marks omitted).  The Second Circuit has held that "[section] 1981 does not provide a separate private right of action against state actors."  *Duplan v. City of New York*, 888 F.3d 612, 621 (2d Cir. 2018) (upholding dismissal of claims brought against municipality under section 1981).  In any event, Williams's claims against the Town, whether they are under section 1983 or section 1981, fail to plausibly allege municipal liability.

laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir.

1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)).  "Section 1983

itself creates no substantive rights; it provides only a procedure for redress for the

deprivation of rights established elsewhere."  *Sykes v. James*, 13 F.3d 515, 519 (2d Cir.

1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

     A municipality cannot be held liable under section 1983 unless the challenged

action was undertaken pursuant to a municipal policy or custom.  *See Monell v. Dep't of*

*Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978).  To state such a claim, a

plaintiff must plead three elements:  "(1) an official policy or custom that (2) causes the

plaintiff to be subjected to (3) a denial of a constitutional right."  *Zahra v. Town of*

*Southold*, 48 F.3d 674, 685 (2d Cir. 1995) (quoting *Batista v. Rodriguez,* 702 F.2d 393,

397 (2d Cir. 1983)).  "[A] municipal policy may be inferred from the informal acts or

omissions of supervisory municipal officials," such as "the persistent failure to discipline

subordinates who violate [persons'] civil rights."  *Id.* (alteration in original) (second

excerpt quoting *Batista*, 702 F.2d at 397).

     "In 'limited circumstances,' a municipality may also be held liable for its failure to

train its employees."  *Hernandez v. United States*, 939 F.3d 191, 206 (2d Cir. 2019)

(quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)).  "To state a failure-to-train

claim, a plaintiff must allege that 'a municipality's failure to train its employees in a

relevant respect . . . amount[ed] to deliberate indifference to the rights of persons with

whom the untrained employees come into contact.'"  *Id.* (alterations in original) (quoting

*Connick*, 563 U.S. at 61).  Because "[d]eliberate indifference is a stringent standard of

fault," to survive a motion to dismiss, a plaintiff must plausibly allege that the

municipality "fail[ed] to act when it ha[d] 'actual or constructive notice,' generally from '[a] pattern of similar constitutional violations by untrained employees,' that its training program [was] 'deficient.'" *Id.* at 207 (quoting *Connick*, 563 U.S. at 61).  Stated differently, a plaintiff must allege "that the municipal action was taken with deliberate indifference as to its known or obvious consequences.  A[n allegation] of simple or even heightened negligence will not suffice." *Outlaw v. City of Hartford*, 884 F.3d 351, 373 (2d Cir. 2018) (citation and alteration omitted).

Before addressing whether Williams has stated a claim against the Town or the County under *Monell*, the Court first addresses the pleading standard for *Monell* claims. Williams asserts that the defendants argue for a heightened pleading standard.  *See* Docket Item 14-1 at 4-6; Docket Item 16-1 at 4-7.  She notes that under *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993), no heightened standard applies to civil rights cases alleging municipal liability.  *See* Docket Item 14-1 at 4-6; Docket Item 16-1 at 4-7.

Williams is correct that *Monell* claims are not subject to a heightened pleading standard.  That said, *Leatherman* also did not carve out a lesser pleading standard for *Monell* claims.  So *Leatherman* simply "stands for the proposition that courts may not impose a more rigorous pleading standard to *Monell* claims." *Goode v. Newton*, 2013 WL 1087549, at *7 (D. Conn. Mar. 14, 2013) (citing *Leatherman*, 507 U.S. at 168-69). Accordingly, *Monell* claims still "must meet the plausibility requirements of [*Twombly*] and [*Iqbal*]." *Guzman v. United States*, 2013 WL 5018553, at *4 (S.D.N.Y. Sept. 13, 2013).  But "in evaluating the plausibility of *Monell* claims, courts are mindful of the Second Circuit's observation that 'it is unlikely that a plaintiff would have information

7

about the city's training programs or about the cause of the misconduct at the pleading

stage.'" *Goode*, 2013 WL 1087549, at *7 (alterations omitted) (quoting *Amnesty Am. v.*

*Town of W. Hartford*, 361 F.3d 113, 130 n.10 (2d Cir. 2004)).

### A.     Claims Against the Town of Cheektowaga

Williams does not state a viable claim against the Town.  As noted earlier, *see*

*supra* at 4, Williams alleges several broad "customs, policies, usages, practices,

procedures[,] and rules" of the Town that caused the Town to falsely arrest her,

maliciously prosecute her, and discriminate against her based on her race.  Docket Item

1 at ¶¶ 45, 60.  But "[t]o state there is a policy does not make it so."  *Betts v. Shearman*,

2013 WL 311124, at *16 (S.D.N.Y. Jan. 24, 2013).  Williams also "must make factual

allegations that support a plausible inference that the constitutional violation took place

pursuant either to a formal course of action officially promulgated by the municipality's

governing authority or the act of a person with policymaking authority for the

municipality."  *Missel v. County of Monroe*, 351 F. App'x 543, 545 (2d Cir. 2009)

(summary order) (citations omitted).  In other words, "[t]he allegations that [the

municipality] acted pursuant to a 'policy[]' without any facts suggesting the policy's

existence[] are plainly insufficient."  *Id.* at 545-46.

Williams's *Monell* claims against the Town are based solely on her own arrest

and prosecution.  *See* Docket Item 1 at ¶¶ 18-35.  But a single example "is insufficient

to allege a practice so widespread and persistent as to amount to a policy or custom of

[the municipality]."  *See Pryor v. City of New York*, 2018 WL 4538904, at *4 (S.D.N.Y.

Sept. 21, 2018); *see also Scott v. City of Rochester*, 2018 WL 4681626, at *6 (W.D.N.Y.

Sept. 28, 2018) ("[A] single example of a police officer['s] fabricating charges to hide an

excessive use of force coupled with the allegations here simply cannot establish a

'persistent and widespread' custom that carries the force of law."). Accordingly,

Williams's single example does not give rise to an inference of a policy, widespread

practice, or informal custom of the Town that caused the alleged constitutional

violations. And for that reason, Williams fails to state plausible *Monell* claims against

the Town for false arrest, malicious prosecution,[7] and racial discrimination.

## B. Claims Against the County of Erie

For the same reasons, Williams does not state a viable claim against the County.

Her factual allegations against the County involve only what happened in her own case,

and her single example "is insufficient to allege a practice so widespread and persistent

---

[7] The Town also argues that Williams's malicious prosecution claim must be dismissed because she does not allege facts supporting the allegation that the underlying criminal charges were terminated in Williams's favor on the merits. *See* Docket Item 6-4 at 5-6. To state a viable section 1983 claim for malicious prosecution, a plaintiff must show that the defendant's conduct was tortious under state law and resulted in a constitutionally cognizable deprivation of liberty. *See Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir. 2003). In New York, that includes showing that the proceeding was terminated in the plaintiff's favor. *Rohman v. N.Y.C. Transit Authority*, 215 F.3d 208, 215 (2d Cir. 2000). The Second Circuit has held that the favorable termination element requires "affirmative indications of innocence." *See Lanning v. City of Glenn Falls*, 908 F.3d 19, 25-26 (2d Cir. 2018). Therefore, alleging that certain charges simply "'were dismissed[,]' . . . without specifying how or on what grounds," is insufficient to plead that the proceedings were terminated in the plaintiff's favor. *Id.* at 28. Here, Williams alleges simply that "the criminal charges against [her] were dismissed . . . when the County finally investigated the charges against her and realized the wrong person was arrested." Docket Item 1 at ¶ 32. She does not include any facts regarding the circumstances of her dismissal. In particular, she fails to allege that the charges were dismissed on the merits; indeed, she does not say in any way *how* the charges were dismissed. For that reason, Williams has failed to plead favorable termination, an element essential to her malicious prosecution claim, and she fails to state a claim for malicious prosecution for that reason as well.

as to amount to a policy or custom of [the County]." *See Pryor*, 2018 WL 4538904, at

*4.

What is more, unlike her claims against the Town, Williams's claim against the

County does not even allege any custom, policy, or practice of the County that resulted

in her malicious prosecution. *See* Docket Item 1 at ¶¶ 67-73. Williams therefore fails to

state a viable *Monell* claim against the County.

The County argues that it is entitled to dismissal of the claim against it for a

second reason: prosecutorial immunity. *See* Docket Item 3-2 at 3. Williams's only

claim against the County is for malicious prosecution, and the only County employees

involved in that prosecution were prosecutors.[8] The County notes that prosecutors are

protected by broad and absolute immunity, and it argues that Williams has not alleged

any conduct by a prosecutor that would negate such immunity. *Id.*

This Court agrees. Prosecutors are absolutely immune from suit, and that

immunity "appl[ies] with full force" to activities that are "intimately associated with the

judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976).

In fact, prosecutorial immunity

---

[8] Williams does not explicitly allege who from the County was involved in her
prosecution. She does not refer to any specific County employee in the complaint, nor
does she name any County employee as a defendant. With respect to her malicious
prosecution claim, she alleges generally that the "[d]efendants continued the
prosecution against [her]," Docket Item 1 at ¶ 30; that she "was forced to attend
numerous court appearances," *id.* at ¶ 31; and that "the criminal charges . . . were
dismissed . . . when the County finally investigated the charges against her," *id.* at ¶ 32.
Therefore, it appears that the complaint bases the County's liability on the actions of the
prosecutors involved in Williams's prosecution. If that is incorrect and County
employees other than prosecutors were involved, Williams may so indicate in any
amended complaint.

> encompasses not only [prosecutors'] conduct of trials but all of their
> activities that can fairly be characterized as closely associated with the
> conduct of litigation or potential litigation, including presentation of evidence
> to a grand jury to initiate a prosecution, activities in deciding not to do so,
> and conduct of plea bargaining negotiations.

*Barrett v. United States*, 798 F.2d 565, 571-72 (2d Cir. 1986) (citations omitted); *see also Ogunkoya v. Monaghan*, 913 F.3d 64, 72 (2d Cir. 2019) (explaining that prosecutors have absolute immunity for decisions and acts that "constituted an exercise of their prosecutorial discretion in preparing a case for indictment and deciding when, where, and how to prosecute").

Even if Williams had adequately alleged *Monell* liability against the County, her malicious prosecution claim against the County likely would be barred by prosecutorial immunity.  As pleaded, the complaint does not suggest that any County employees other than district attorneys were involved in her prosecution or that the district attorneys who were involved acted in any way that was not "intimately associated with the judicial phase of the criminal process."  *See Imbler*, 424 U.S. at 430.  Any amended complaint that includes the County as a defendant therefore should plead facts sufficient to allege a claim against the County that is not barred by prosecutorial immunity.

## II.    LEAVE TO AMEND

Williams has not asked for leave to amend her complaint.  Nevertheless, because leave to amend should be "freely given" whenever a complaint is dismissed, *see McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007), Williams may file an amended complaint, within 30 days, that addresses the deficiencies noted

11

above.  If she does not, all claims against the Town and the County will be dismissed, but her claims against the individual defendants may proceed.

## **CONCLUSION**

For the reasons stated above, the County's motion to dismiss, Docket Item 3, and the Town's motion to dismiss, Docket Item 6, are granted, but Williams may amend her complaint, within 30 days, to address the deficiencies noted above.  No later than 30 days after any amended complaint is filed, the County and the Town may answer, move against, or otherwise respond to the amended complaint.  If Williams does not file an amended complaint within 30 days, then her claims against the Town and the County will be dismissed and the Clerk of the Court shall terminate the Town and the County as defendants without further order.  To take into account the above opportunity to amend, and for the sake of efficiency, the time within which the individual defendants may answer, move against, or otherwise respond to the complaint is extended until a response is due from the Town.

SO ORDERED.

Dated:   March 10, 2022
         Buffalo, New York


                                              */s/ Lawrence J. Vilardo*
                                              LAWRENCE J. VILARDO
                                              UNITED STATES DISTRICT JUDGE